Kent W. Spence (*pro hac vice*)
Grant H. Lawson (*pro hac vice*)
THE SPENCE LAW FIRM, LLC.
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
Kspence@spencelawyers.com
Lawson@spencelawyers.com

Patrick C. Cook, WSBA No. 28478
Kathleen Keenan Kindred, WSBA No. 22055
Walthew, Thompson, Kindred, Costello & Winemiller, P.S.
123 Third Avenue So.
Seattle, WA 98104
pcook@walthew.com
kmkeenan@msn.com

# IN THE UNITED STATES FEDERAL DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALLEN M. WALL; AUBREY A. BOLDUC, individually; MICHELLE BOLDUC, individually, on behalf of the marital community of Aubrey and Michelle Bolduc; MONTE F. NELMS, individually; and DEBORAH NELMS, individually, on behalf of the marital community of Monte and Deborah Nelms; and ZEKE L. SIMMONS.<br><br>Plaintiffs,<br><br>vs.<br><br>DELTA PETROLEUM CORPORATION; SIERRA ENGINEERING; DAVID DEANS, individually; LONNIE DROLLINGER, individually; and "JOHN DOE" ONE THROUGH FIVE,<br><br>Defendants. | NO. CV-09-5027-FVS<br><br>FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES AND JURY DEMAND |

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 1

The plaintiffs, by and through their attorneys, The Spence Law Firm LLC by Kent W. Spence and Grant H. Lawson and Walthew, Thompson, Kindred, Costello and Winemiller, P.S. by Patrick C. Cook and Kathleen K. Kindred for the causes of action against defendants hereby file their Amended Complaint, with written consent of the parties according to F.R.C.P. 15(a)(2) and allege as follows:

## I.    IDENTIFICATION OF THE PARTIES

1) Plaintiff Allen M. Wall is domiciled in the State of Arkansas.

2) Plaintiff Aubrey A. Bolduc is domiciled in the Province of Alberta, Country of Canada.

3) Plaintiff Michelle Bolduc is married to Aubrey A. Bolduc. She brings this in her personal capacity and on behalf of the marital community of Michelle and Aubrey A. Bolduc.

4) Plaintiff Monte F. Nelms is domiciled in the State of Wyoming.

5) Plaintiff Deborah Nelms is married to Monte F. Nelms. She brings this in her personal capacity and on behalf of the marital community of Deborah and Monte F. Nelms.

6) Plaintiff Zeke L. Simmons is domiciled in the State of Washington.

7) Defendant Delta Petroleum Corporation (hereinafter Defendant Delta) is a Delaware corporation, registered to do business in the State of Washington and is actively doing business in Washington.

8) Upon information and belief, at all times relevant to this matter, Defendant Delta was the owner of the Washington State Oil and Gas Permit No. 532, to drill a gas

well in Section 31, T6N, R22W W.M., Klickitat County, Washington (hereinafter referred to as the "wellsite").

9) Defendant Sierra Engineering (hereinafter Defendant Sierra) is a dba of Jolley Castillo Drennon, Ltd., a Texas Limited Liability Partnership.

10) Upon information and belief, at all times relevant to this matter, Defendant Sierra contracted with Defendant Delta to provide wellsite managers, or "company men," at the wellsite.

11) Defendant David Deans is an individual domiciled in the State of North Carolina.

12) Upon information and belief, at all times material, David Deans was employed by Defendant Sierra and was a wellsite manager, company man, and/or supervisor at the wellsite.

13) Upon information and belief, at all times material, Defendant David Deans was acting as an employee and/or agent of Defendant Delta.

14) Defendant Lonnie Drollinger is an individual domiciled in the State of Alaska.

15) Upon information and belief, at all times material, Lonnie Drollinger was employed by Defendant Sierra and was a wellsite manager, company man, and/or supervisor at the wellsite.

16) Upon information and belief, at all times material, Defendant Lonnie Drollinger was acting as an employee and/or agent of Defendant Delta.

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 3

17) Defendants John Doe I-V, have been added to this complaint in the event that during the discovery process it is determined that other defendants need to be added herein, to reserve the right to add additional unknown defendants.

18) Plaintiffs Allen M. Wall, Monte F. Nelms and Zeke L. Simmons were employed by DHS Drilling Company (hereinafter "DHS").

19) Upon information and belief, at all time material, Defendant Delta contracted with DHS to provide the drilling rig, equipment and labor to perform an "air drilling" procedure, for a 15,030 foot gas well at the wellsite.

20) At all times material, Plaintiff Aubrey A. Bolduc was employed by Air Drilling Associates.

21) Upon information and belief, Defendant Delta contracted with Air Drilling Associates to provide the air supply equipment for performing the air drilling procedure at the wellsite.

22) On or about July 25, 2008, the Defendants, along with DHS and Air Drilling Associates, and their respective employees, were engaged in drilling a gas well at the wellsite.

23) At approximately 01:30 am on July 25, 2008, Plaintiffs were severely and permanently injured after a large gas explosion occurred on the drilling rig.

24) This Complaint is brought against all employees and agents of each of the Defendants involved in this incident and against the managerial agents and safety personnel for the Defendants, as well as against all other managers and supervisors of the Defendants who set policy or who played an active or passive role in the hiring, training, and supervision of the employees of the Defendants. Each of the Defendants, as legal

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 4

entities such as corporations, LLP's and joint ventures, can only act through their employees and agents. As the employer of those who set policy and play either an active or passive role in the hiring, training, and supervision of the employees, these Defendants, and each of them, are responsible for their tortuous acts and/or omissions wherein they negligently failed to properly hire, train and supervise their employees, supervisors, and managerial agents. The Defendants, and each of them, are liable for the acts and omissions of their officers, employees, agents, managerial agents, safety personnel, and supervisors who set policies and procedures, authorize the doing and manner of the acts in question, and who ratified or approved the actions which were the direct and proximate cause of Plaintiffs' tragic injuries.

25) Each of the Defendants were required to meet and comply with all statutes, rules, regulations, policies, and procedures required by the United States Federal Government and the State of Washington, as well as by the various regulatory agencies of each, that in any way pertain to the incident that is the subject matter of this complaint.

26) The Defendants, and each of them, either individually or pursuant to the standard of vicarious liability, owed a duty to the Plaintiffs to exercise reasonable care and safety.

27) The Defendants, and each of them, were responsible for the hiring, supervision, training, assignment, and control of their own actions as well as the actions of their employees.

28) As a direct and proximate cause and result of the acts and omissions of the Defendants as alleged herein, the Plaintiffs suffered serious, severe and permanent injuries

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 5

for which the Defendants are responsible; said injuries are more particularly set forth below in the section of this Complaint entitled "Damages."

## II.   JURISDICTION AND VENUE

29) Plaintiffs incorporate by reference all statements and allegations contained in numbered paragraphs 1 through 28 herein.

30) Pursuant to 28 U.S.C. § 1332, complete diversity exists and the claims are well in excess of $75,000.00 and the Court has jurisdiction.

31) Venue is proper in this Court according to 28 U.S.C., Section 1391, as the location of the events alleged in this complaint took place in Klickitat County, Washington.

32) This Court has both personal and subject matter jurisdiction.

## III.   FACTS COMMON TO ALL CAUSES OF ACTION

33) Plaintiffs incorporate by reference all statements and allegations contained in numbered paragraphs 1 through 32 herein.

34) At all times material to this matter, Plaintiffs were working within the scope of their employment.

35) At all times material to this matter, Defendant Delta was the operator, wellsite owner and holder of permit No. 532, and a drilling operation was being performed on the DHS Drilling Rig # 109.

36) Upon information and belief, on or about July 25, 2008, all parties were in engaged in a procedure known as "air-drilling" at the Delta wellsite.

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 6

37) Upon information and belief, Defendants Delta and David Deans, had no previous experience with air drilling, or the proper air drilling procedure, method and safety requirements.

38) Upon information and belief, Defendants David Deans and Lonnie Drollinger, who were the "company men," or wellsite supervisors acting for Defendants Delta and Sierra, had the ultimate authority over management of the operations on the rig.

39) Upon information and belief, Defendants David Deans and Lonnie Drollinger, were responsible for all decisions on the rig, including all decisions prior to and during the time of the explosion in this matter.

40) Upon information and belief, Defendants David Deans and Lonnie Drollinger, were inadequately trained, and unqualified to be a company men or wellsite supervisors on July 25, 2008.

41) Upon information and belief, all Defendants did not employ or require gas sensors to be utilized while drilling the well on July 25, 2008.

42) Upon information and belief, Defendants knowingly and willfully allowed the drilling operation to occur without gas sensors, or without sufficient safety training and knowledge of known danger associated with air drilling.

43) Upon information and belief, Defendants David Deans and Lonnie Drollinger, as wellsite supervisors, company men, and ultimate safety officers of the wellsite, decided not to require gas sensors, in complete disregard for the lives and safety of all employees at the well site.

44) Upon information and belief, Defendants installed, or caused to have installed, gas sensors, after the explosion occurred, but before investigators from the

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 7

Washington Occupational Safety and Health Administration arrived to investigate the explosion and the resulting injuries to the Plaintiffs.

45) Upon information and belief, Defendants knowingly allowed the air drilling operation to occur without the proper two-inch suction device on the rotating head, which is a standard industry protocol and was required to be hooked into the head of the well to suction gas seeping out of the well head.

46) Upon information and belief, a series of three (3) "blow outs," or "kicks," occurred on July 25, 2008, prior to the explosion which seriously and permanently injured Plaintiffs.

47) Upon information and belief, each blow out or kick, consisted of pressurized gas, air, water, drilling fluids and/or other materials, which shot out of the drill hole.

48) Upon information and belief, gas was released from the drill hole throughout a series of events leading up to the explosion.

49) Upon information and belief, the gas releasing from the drill hole resulted in the entire drilling rig area air space being filled with dangerous gas.

50) Upon information and belief, Defendant David Deans was sleeping in his trailer during the first blow out or kick on July 25, 2008.

51) Upon information and belief, Defendant David Deans, who was in full and total control of the drilling operation at that time, was awakened by DHS drilling crew employees during the first blow out or kick and immediately went to the rig floor, where he met with the DHS supervisor, Mike Pitts (hereinafter "DHS Supervisor") and other DHS employees.

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 8

52) Upon information and belief, after the first blow out or kick, the DHS Supervisor requested that Defendant David Deans allow him to "shut in the well" or shut the blow out preventer (hereinafter the "BOP").

53) Upon information and belief, Defendant David Deans refused, and instructed the DHS Supervisor not shut the BOP.

54) Upon information and belief, a second blow out or kick occurred several minutes after the first blow out or kick, which released more gas, water, drilling fluids and/or other liquids and materials.

55) Upon information and belief, the DHS Supervisor, once again requested to shut in the well or shut the BOP, and Defendant David Deans refused to allow this.

56) Upon information and belief, a third blow out or kick occurred, minutes after the second event.

57) Upon information and belief, the third blow out or kick, resulted in pressurized gas, air, water and drilling fluids to shoot approximately 90 feet in the air from the drill hole.

58) Upon information and belief, the DHS Supervisor, again requested that Defendant David Deans allow him to shut in the well in or shut the BOP due to the unreasonably dangerous threat of an explosion.

59) Upon information and belief, Defendant David Deans responded to the DHS Supervisor's third request to shut in the well by stating that he would allow the BOP to be shut.

60) Upon information and belief, the DHS Supervisor proceeded to walk over to the BOP controls with the intention shutting the BOP.

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 9

61) Upon information and belief, as the DHS Supervisor was walking toward the BOP controls, Defendant David Deans then instructed the DHS Supervisor not to shut in the well.

62) As a result, the well was not shut in, and the dangerous gas continued to fill the rig floor area.

63) Upon information and belief, Defendant David Deans, was notified of the dangerous condition several times prior to the explosion, and refused to allow the DHS Supervisor to shut in the well, or shut the BOP.

64) Upon information and belief, had the DHS Supervisor been allowed to shut in the well or shut the BOP after any one of his requests, the explosion would not have occurred and Plaintiffs' severe and life threatening injuries would have been prevented.

65) Defendants, in reckless disregard for the lives and safety of plaintiffs pushed forward the drilling operation, despite inadequate safety equipment or proper training.

66) Common industry practice, for all Defendants, is to provide training and instruction on the proper use of the air drilling technique, including providing safety personnel; shutting in the well or shutting the BOP after receiving a "kick" or spike of unknown pressure coming out of the hole; providing gas sensors at all times during a drilling operations; providing the necessary and required safety equipment in an "air drilling" procedure.

67) Federal and Washington State regulations in place at the time of the explosion required the Defendants to provide and utilize gas sensors, and adequate suction

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 10

equipment for the air drilling procedure, along with providing training for all employees and adequate supervision on the wellsite.

68) Upon information and belief, Defendants contacted Pason Systems Corporation to install the gas sensor equipment actions of installing gas sensor equipment immediately after the explosion and prior to Washington OSHA investigators ("WISHA") showing up on the scene for the investigation.

69) Defendants had an affirmative duty to provide safety to all employees including the Plaintiffs on the drilling rig.

70) Defendant David Deans had a duty to ensure safety on the drilling platform, to act as a competent, trained and experienced company man/supervisor; and to prevent the explosion and Plaintiffs' subsequent injuries.

71) Defendant David Deans lacked adequate experience to qualify as a company man for air-drilling procedures in industry practices.

72) Defendants had an affirmative duty to provide safety to all employees including Plaintiffs on the drilling rig.

73) Defendants had a duty to ensure safety on the drilling platform and to prevent Plaintiffs injuries.

74) Defendants failed in their duty to properly and safely oversee the entire drilling operation, provide safety on the drilling platform, ensure compliance with state and federal safety regulations and prevent the severe injuries to Plaintiffs.

75) Defendants Delta and Sierra failed in their duty to hire and employ an experienced, trained, competent, knowledgeable and adequate company men or wellsite supervisors at the wellsite.

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 11

76) Defendants failed to conduct safety meetings with the drilling crew employees, other subcontractors and employees, regarding the responsibilities all Defendants had to ensure safe operation of the air drilling procedure.

77) No adequate training or prior instruction on the air drilling method was provided by Defendants to any employees at the wellsite, in spite of assuming this duty by fully controlling the well site.

78) Upon information and belief, Defendants conducted thorough training on the air drilling procedure and provided all necessary safety equipment, including gas sensors and the rotating head two-inch suction valve at the wellsite, immediately following the explosion, demonstrating that Defendants had both retained and exercised control over the safety aspects of the drilling operations and assumed affirmative safety duties over the drilling operation.

### IV. CAUSE OF ACTION AGAINST DEFENDANTS
(NEGLIGENCE)

79) Plaintiffs incorporate by reference all statements and allegations contained in numbered paragraphs 1 through 78 herein.

80) Plaintiffs' injuries were proximately caused by the wrongful acts, recklessness, willfulness, negligence, reprehensible conduct and fault of all Defendants.

81) Defendants had a duty to provide Plaintiffs with a work environment safe from hazards, including but not limited to, hazards associated with the air drilling operations being performed by all Defendants.

82) Defendants had a duty to provide and utilize gas sensors, which would have prevented the explosion from occurring.

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 12

83) Defendants had a duty to ensure that all proper drilling equipment was used for an air drilling process, including but not limited to, a safety suction device, which would have prevented the build up of dangerous gas on and around the rig floor area and the subsequent explosion.

84) Defendants had a duty to provide an experienced, knowledgeable, competent and adequately trained wellsite supervisor and company man, but failed to do so.

85) Defendants had a duty to provide a wellsite supervisor or company man who understood the risks involved with the "air drilling" procedure and the necessary safety precautions that were needed to ensure Plaintiffs' safety.

86) Defendant David Deans, had a duty to shut in the well, or shut the BOP, at the first sign of danger to the drilling rig employees and failed to do so.

87) Defendant David Deans wholly disregarded the signs of danger that would have been obvious to any competent and properly trained company man or wellsite supervisor, and his inaction wrongfully put at risk and ultimately caused the injuries to the Plaintiffs at the wellsite.

88) Defendants actions fell well below the standard of care in the industry for providing safety to Plaintiffs and all workers on the jobsite.

89) Defendant David Deans had a duty to close the BOP and shut in the well after the first occurrence of a "blow out," approximately 20 minutes before the explosion occurred.

90) Defendant David Deans, who had the ultimately authority, and who directed DHS supervisor Mike Pitts not to shut in the well or shut the BOP after several requests

during the events leading up to the explosion, acted recklessly and willfully in refusing to allow the well to be shut in, which would have prevented this tragic event.

91) Defendants' conduct in discharging their duties fell extremely below the accepted standard of care and caused the severe and permanent injuries to Plaintiffs. Defendants acts and omissions breached duties owed to Plaintiffs resulting in negligence.

92) Defendants' negligence included, but was not limited to, the following:

a) Failure to provide a safe work environment;

b) Failure to provide and utilize safety equipment to provide a safe worksite for all employees.

c) Failure to use and maintain equipment to allow safe operations by contractors/subcontractors and all employees;

d) Failure to warn of dangers and hidden hazards located on the worksite;

e) Failure to initiate, employ and enforce safety procedures to ensure a safe work environment;

f) Failure to conduct safety meetings;

g) Failure to ensure that adequate warnings were in place;

h) Failure to adequately train and supervise the employee(s) in the use and/or proper use of safety equipment;

i) Failure to provide an adequately trained wellsite supervisor/company man;

j) Failure to develop safe work policies and procedures;

k) Failure to implement safe work procedures;

l) Failure to abide by state and federal rules and regulations that were in effect and controlling at the time of this incident;

m) Failure to meet the standards of care requisite in the industry;

n) Failure to develop, utilize and enforce a program to protect individuals working at their facilities from potentially hazardous conditions;

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 14

o) Failure to institute appropriate policies and procedures to avoid the occurrences that resulted in the injuries to Plaintiffs;

p) Failure to act properly and promptly to protect the Plaintiffs when clear signs of danger to the safety of all workers at the wellsite appeared.

93) As a direct and proximate cause of the negligence, recklessness, willfulness and reprehensible conduct of the Defendants, Plaintiffs were critically, severely and permanently injured.

94) As a result of the willful, wanton, reckless, reprehensible and negligent acts and omissions of the Defendants, which led to Plaintiffs' injuries, Plaintiffs were grievously damaged as more specifically detailed in the section of this Complaint denominated "Damages."

95) The Doe Defendants (Does 1-5) are persons, firms, corporations or entities that had duties to inspect and/or maintain the premises on which Plaintiff's were injured and to warn of and eliminate dangerous conditions on the premises.

96) One or more of the Doe defendants breached one or more of the aforesaid duties by failing to conduct adequate inspections and by failing to warn of and eliminate dangerous conditions of the premises.

97) One or more of the breaches of duty by the Doe defendants was a proximate cause of the injuries and damages to the Plaintiff's.

## V. DAMAGES

98) Plaintiffs incorporate by reference all statements and allegations contained in numbered paragraphs 1 through 97 herein.

99) As a direct and proximate cause and consequence of the willful, wanton, reckless, reprehensible and negligent actions of Defendants, Plaintiffs, Allen M. Wall,

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 15

Aubrey A. Bolduc, Monte F. Nelms, and Zeke L. Simmons were severely and permanently injured.

100) As a direct and proximate cause and consequence of the willful, wanton, reckless, reprehensible and negligent actions of Defendants, Plaintiffs, Allen M. Wall, Aubrey A. Bolduc, Monte F. Nelms and Zeke L. Simmons, were severely and permanently injured. Plaintiffs are entitled to the following past and future damages:

(1) Economic Damages, including, but not limited to;
   (a) Medical expenses related to the injuries from the explosion;
   (b) Loss of income;
   (c) Loss of future earnings;
   (d) Loss of earning capacity;
   (e) Loss of employment;
   (f) Loss of business and employment opportunities
   (g) Cost of obtaining substitute domestic services

(2) Noneconomic Damages, including, but not limited to;
   (a) Pain and Suffering
   (b) Inconvenience
   (c) Mental Anguish
   (d) Disability
   (e) Disfigurement
   (f) Emotional Distress
   (g) Loss of Society and Companionship
   (h) Loss of Consortium
   (i) Injury to Reputation
   (j) Humiliation
   (k) Destruction of the parent-child relationship

(3) Penalty and exemplary damages for violations of State and/or Federal law.

(4) Any and all other costs of this action and such other damages as are fair and just.

101) As a direct and proximate result of one or more of the previously mentioned breaches of duty, plaintiff Michelle Bolduc has and will experience impairment of her spousal relationship with plaintiff, Aubrey A. Bolduc.

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 16

102) As a direct and proximate cause and consequent of the Defendants' negligence, Michelle Bolduc, is entitled to the following past and future damages:

    (1) Loss of care, comfort and society;

    (2) Loss of love and affection;

    (3) Loss of Emotional support;

    (4) Loss of sexual relations;

    (5) Loss of help, support and otherwise.

103) As a direct and proximate result of one or more of the previously mentioned breaches of duty, plaintiff Deborah Nelms has and will experience impairment of her spousal relationship with plaintiff, Monte F. Nelms.

104) As a direct and proximate cause and consequent of the Defendants' negligence, Deborah Nelms, is entitled to the following past and future damages:

    (1) Loss of care, comfort and society;

    (2) Loss of love and affection;

    (3) Loss of Emotional support;

    (4) Loss of sexual relations;

    (5) Loss of help, support and otherwise.

## VI.   AD DAMNUM

WHEREFORE, Plaintiffs respectfully request for a judgment against the Defendants, and each of them, in an amount supported by the allegations of this

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 17

Complaint, and to be proven at trial, and for such other and further relief as the Court deems equitable and proper.

A JURY TRIAL IS DEMANDED.

DATED this 3 day of June, 2009.

By _____
Grant H. Lawson, pro hoc vice – WY 6-4260
Kent W. Spence, pro hoc vice – WY 5-2399
The Spence Law Firm, LLC
P.O. Box 548
Jackson, WY  83001
307-733-7290

FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES - 18